**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JORDAN BAILEY**, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 2:19-cv-01677 |
| Plaintiff, | ) ) | |
| | ) | Judge Edmond A. Sargus, Jr. |
| v. | ) | Magistrate Judge Kimberly A. Jolson |
| | ) | |
| **Black Tie Management Company LLC,** ***et al.,*** | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION FOR FAIR LABOR STANDARDS ACT SETTLEMENT APPROVAL

Representative Plaintiff Jordan Bailey ("Representative Plaintiff"), on behalf of himself and of the class members, and Defendants Black Tie Management Company LLC, Black Tie Moving Services LLC, Black Tie Moving Columbus LLC, Black Tie Moving Cleveland LLC Black Tie Moving Cincinnati LLC, James Dustin Black, and Christopher Hess ("Named Defendants") (collectively, the "Parties") hereby jointly and respectfully request that this Honorable Court: approve the Parties' Settlement Agreement and Release of the claims made pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 216(b), the Ohio Minimum Fair Wage Standards Act, Ohio Revised Code §§ 4111 *et seq*. ("OMFWSA"), and Ohio Revised Code § 4113.15; approve the requested Service Award to Representative Plaintiff; and, approve Plaintiffs' Counsel's requested attorneys' fees and costs.

In support of this Motion, the Parties submit the following:

| | | |
|---|---|---|
| **Exhibit 1**: | | Fully executed Settlement Agreement, with Exhibit A - Class Settlement Distribution; |
| **Exhibit 2**: | | Declaration of Robi J. Baishnab; and |
| **Exhibit 3**: | | Proposed Order Granting Approval of Settlement. |

i

As reflected in the attached Settlement Agreement, through settlement discussions it was determined that Black Tie Moving Nashville LLC and Black Tie Moving Memphis LLC were more appropriate defendant-entities than Black Tie Moving Cleveland LLC and Black Tie Moving Cincinnati LLC. Therefore, Black Tie Moving Nashville LLC and Black Tie Moving Memphis LLC replaced Black Tie Moving Cleveland LLC and Black Tie Moving Cincinnati LLC in settlement discussions. Accordingly, the Named Defendants, along with Black Tie Moving Nashville LLC and Black Tie Moving Memphis LLC will be collectively referred to as "Defendants" throughout this Joint Motion, Memorandum in Support, and Proposed Order Granting Settlement Approval. In contrast, Black Tie Management Company LLC, Black Tie Moving Services LLC, Black Tie Moving Columbus LLC, Black Tie Moving Memphis, LLC and Black Tie Moving Nashville, LLC will be referred to within the same documents collectively as "Settlement Defendants."

As explained in the attached Memorandum in Support, settlement was reached during arms-length negotiations between the Parties and before third-party neutral, Mike Ungar; where each Party was represented by experienced counsel and following substantial investigation and informal exchange of information; and on the basis of mutual recognition of the strengths and weaknesses of the Party's respective legal positions, and in light of the risks to each side of continued litigation.

Respectfully submitted,

**NILGES DRAHER LLC**

*/s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)
34 N. High Street
Suite 502
Columbus, OH  43215
Phone:  614.824.5770
Fax:  330.754.1430
rbaishnab@ohlaborlaw.com

Shannon M. Draher (0074304)
Hans A. Nilges (0076017)
7266 Portage Street NW
Suite D
Massillon, OH  44646
Phone:  330.470.4428
Fax:  330.754.1430
sdraher@ohlaborlaw.com
hans@ohlaborlaw.com

*Counsel for Plaintiffs*

**DINSMORE & SHOHL LLP**

*/s/ Michael B. Mattingly (with permission)*
Michael B. Mattingly, Esq. (#0089847)
Lindsey N. Boyd, Esq. (#0099076)
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: 513-977-8397
Fax: 513-977-8141
Email: michael.mattingly@dinsmore.com
        lindseyN.boyd@dinsmore.com

*Counsel for Defendants*

**MEMORANDUM IN SUPPORT**

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **The Action**

On April 29, 2019, Representative Plaintiff Jordan Bailey filed this Action, alleging that

Defendants Black Tie Management Company LLC, Black Tie Moving Services LLC, Black Tie

Moving Columbus LLC, Black Tie Moving Cleveland LLC, Black Tie Moving Cincinnati LLC,

James Dustin Black, and Christopher Hess (collectively "Named Defendants") violated the

FLSA by failing to pay Representative Plaintiff and other similarly situated movers and drivers

for off-the-clock work, travel time, and/or overtime.[1] Collective claims were asserted under the

FLSA, and Rule 23 class action overtime claims were asserted under the OMFWSA and Ohio

Revised Code § 4113.15.[2]

On May 28, 2019, Named Defendants filed a Motion to Dismiss, which was fully briefed,

and ultimately denied as moot.[3] On June 18, 2019, Representative Plaintiff filed an Amended

Complaint,[4] which Named Defendants answered on July 8, 2019.[5] Defendants denied and

continue to deny that they violated any federal or state law, and a *bona fide* dispute exists

between the Parties regarding the amount of compensation, if any, owed to the Ohio Rule 23

Class Members and/or the FLSA Collective Members as alleged in the Amended Complaint.

Representative Plaintiff filed his Motion for Conditional Certification on August 6, 2019,

which was fully briefed, and granted in part and denied in part on November 12, 2019.[6] Pursuant

---

[1] Original Complaint (ECF No. 1).
[2] Representative Plaintiff also alleged individual unpaid minimum wages (ECF No. 12 at ¶¶ 60-62; and 97 to 106), which have been resolved through settlement.
[3] ECF Nos. 9, 11, 26, and 33.
[4] ECF No. 12.
[5] ECF Nos. 12 and 17.
[6] ECF Nos. 22, 25 to 26, 28 to 32, and 34.

to Section 16(b) of the FLSA, Notice issued with a 90-day opt-in period that closed on March 30, 2020. The original notice list consisted of more than 1,100 individuals, however, contact information was missing for 62 individuals. Of those, Defendants were able to identify 18 who were full-time workers and provided their contact information.[7] Supplemental notice issued to those individuals on May 5, 2020, with a 45-day notice period that closed on June 19, 2020.[8] Sixty-nine putative FLSA Class Members joined this case,[9] and these Opt-In Plaintiffs are identified as such in Exhibit A of the Settlement Agreement.[10] Settlement includes Defendants and Settlement Class Members consisting of Representative Plaintiff, current Opt-In Plaintiffs, and those who worked in Ohio during the period of April 29, 2016 to May 11, 2020, who have not yet joined the lawsuit but will have the opportunity to join the collective through settlement.[11]

      **B.**      <u>**Negotiation of The Settlement**</u>

The Parties exchanged and analyzed voluminous timekeeping and payroll records, including Representative Plaintiff serving subpoenas upon three payroll companies: iSovled (fka Sage); Paylocity; and ADP. Plaintiffs' Counsel also served on Named Defendants written interrogatories, requests for admissions, and requests for production of documents; as well as serving a Rule 30(b)(6) notice of deposition. In the interest of settlement, the Parties agreed to stay the Rule 30(b)(6) deposition and Named Defendants' discovery responses, except for wage and hour data needed to meaningfully prepare for mediation.[12]

---

[7] *See* Status Report (ECF No. 64).
[8] *See attached* Declaration of Robi J. Baishnab ("Baishnab Decl.") at ¶ 9.
[9] *See* ECF Nos. 6, 13, 27, 38 to 40, 43 to 52, 56, 62, 70, 72, and 75.
[10] **Ex. 1**.
[11] *Id*. and Baishnab Decl. at ¶ 12.
[12] Baishnab Decl. at ¶ 13.

Defendants produced wage and hour data for 84 Settlement Class Members in the form of Excel spreadsheets. Defendants also provided a summary table, outlining policies across Defendants' Nashville, Memphis, Columbus, and Dallas branches ("Policy Worksheet"). Details contained within the Policy Worksheet included branch locations, date ranges, and methods for calculating overtime compensation, off-the-clock work, travel time, and classification of Settlement Class Members as either W-2 or 1099 workers. The wage and hour data and Policy Worksheet enabled the Parties to understand and assess, in detail, the substance of their respective claims and defenses.[13]

Plaintiffs' Counsel analyzed the documents provided by Defendants, and engaged a PhD level economist to review the timekeeping and pay records to calculate the alleged unpaid overtime due to Representative Plaintiff and the Settlement Class Members.[14]

On June 3, 2020, the Parties participated in a mediation before Mediator Mike Ungar and reached a settlement.[15] In order to avoid the burden, expense, risks and uncertainty of litigation, the Parties have agreed to settle and resolve any and all claims that could be asserted in the Action. The settlement terms are reflected in the Settlement Agreement attached as **Exhibit 1** to this Motion.

The Parties disagreed, and continue to disagree, as to whether Defendants failed to pay the Settlement Class Members for off-the-clock work, travel time, and/or overtime as alleged, whether liquidated damages are appropriate, and whether a two-year or three-year statute of limitations is applicable. Nevertheless, the Parties have come to a reasonable, fair, and adequate agreement to resolve this matter. The Parties agree that settlement, subject to Court approval,

---

[13] *Id*. at ¶ 14.
[14] *Id*. at ¶ 15.
[15] *Id*. at ¶¶ 10 to 11.

will fully and finally settle and resolve this action and result in the dismissal of this lawsuit, with prejudice.[16]

As part of their pre-mediation evaluation, Plaintiffs' Counsel calculated the mathematical expected value of the case through trial using TreeAge Pro©, a decision tree software. Specifically, Plaintiffs' Counsel assigned subjective probability values to each stage of the litigation (*e.g.*, conditional certification, Rule 23 class certification, decertification, trial, establishing willfulness, establishing entitlement to liquidated damages in various amounts, etc.). Each of these risk probabilities were then compounded and multiplied by the damages calculated by Plaintiffs' Counsel's damages consultant. By utilizing this process, Plaintiffs' Counsel believes they were able to more fully appreciate the complete risk picture, and economic value of the case, rather than simply relying on intuition and experience. The settlement that was reached exceeded the pre-mediation expected value. Plaintiffs' Counsel believes that this fact confirms their experiential opinion that the proposed settlement is fair, adequate, and reasonable.[17]

Counsel for all Parties believe in the merits of their respective client's position but, nonetheless, recognize that the litigation is uncertain in terms of duration, cost, and result. Continued litigation would be risky for all. Even if Representative Plaintiff succeeded on the merits of his collective claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.[18]

## C.     The Settlement Terms

### 1.    Settlement Notices

The Settlement Class consists of the 103 current and former drivers and/or movers that worked for Settlement Defendants during the time period of April 29, 2016 to May 11, 2020,

---

[16] *Id*. at ¶¶ 18 to 19.
[17] *Id*. at ¶¶ 20 and 22.
[18] *Id*. at ¶ 21.

4

who suffered alleged damages based on data produced by Settlement Defendants, and who are identified in the attached Exhibit A of the Settlement Agreement.[19] Representative Plaintiff is included in the definition of Settlement Class Members. Of these 103 Settlement Class Members, 69 are Opt-In Plaintiffs ("Opt-In Plaintiffs").[20]

If approved by this Court, settlement will be effectuated by sending "Notice of Settlement" by Standard U.S. mail to each Settlement Class Member, which will explain the terms of settlement, the claims process, and the amount of respective Settlement Class Members' Settlement Award. Opt-In Plaintiffs will receive a copy of the Notice attached as Exhibit B to the Settlement Agreement, and those Settlement Class Members who worked in Ohio and suffered alleged damages, but have not yet joined this case will receive a copy of the Notice attached as Exhibit C to the Settlement Agreement.[21] Both forms of Notice will be accompanied by the Settlement Class Member's settlement payment. The Settlement Class Members who cash their settlement checks will agree to the release of claims described in the Settlement Agreement and each Notice.[22]

**2. Allocations**

The Settlement Agreement resolves all claims made in the Action and provides class-wide relief and distribution of funds pursuant to the FLSA. Settlement includes Defendants paying the **$145,211.13**, inclusive of alleged unpaid overtime, Service Award, liquidated damages, and attorneys' fees, and costs.

---

[19] Ex. 1.
[20] *See* ECF Nos. 6, 13, 27, 38 to 40, 43 to 52, 56, 62, 70, 72, and 75.
[21] Ex. 1.
[22] *See* Exs. B and C of the Settlement Agreement.

The Settlement Agreement provides for a service award of **$2,500.00** to Representative Plaintiff as recognition of, and in consideration for, his substantial assistance rendered to Plaintiffs' Counsel and to the Action in pursuing the rights of all Settlement Class Members.[23]

If approved by the Court, **$48,403.71**, which represents one-third of the total settlement amount, shall be distributed to Plaintiffs' Counsel as attorneys' fees. Plaintiffs' Counsel's actual fees far exceed the one-third being requested. For example, Plaintiffs' Counsel has incurred more than approximately $11,315.00 in fees since the Parties reached a settlement in principle.[24] Settlement also includes **$15,884.31** to be distributed to Plaintiffs' Counsel for costs incurred in pursuing the Action.[25] Plaintiffs' Counsel will not receive payment for any fees or costs incurred in the course of securing and effectuating settlement, including responding to inquiries from Settlement Class Members.[26] Defendants do not oppose the requested fees or costs.[27]

After deducting fees, expenses, and service award, the remaining amount of **$78,423.11** ("Net Settlement Fund") is allocated across the Settlement Class Members as reflected in Exhibit A of the Settlement Agreement. Settlement Awards to each Settlement Class Member were determined by using the respective member's *pro rata* share of the Net Settlement Fund based on the following:

  a. Defendants produced wage and hour data for 84 Settlement Class Member (50 Opt-in Plaintiffs, and 34 Ohio workers who had more than zero damages but who have not opted-in). From this data, alleged overtime damages were calculated at an estimated 300 minutes of unpaid worktime per week for the period of April 29, 2016 to May 11, 2020. Then, the average overtime damages were calculated for these 84 Settlement Class Members. The average overtime damages were calculated by first excluding statistical outliers from the data. This "trimmed" average was compared to the calculated median and simple

---

[23] Baishnab Decl. at ¶ 23.
[24] *Id*. at ¶¶ 24 to 25.
[25] *Id*. at ¶ 27.
[26] *Id*. at ¶ 28.
[27] *Id*. at ¶ 29.

        average; and the consultant concluded that the trimmed average used here is closer to the median than the simple average. The consultant further checked the calculations against a 1.5*interquartile range (IQR) rule to determine outliers, with the results being substantially in line with the methodology used. The consultant therefore concluded that this methodology provides the fairest and most equitable distribution using the data provided.

    b.   The average overtime damages for the 84 individuals with data was applied to the 19 Opt-in Plaintiffs with no data. The estimated percentage-share of each Settlement Class Members was then calculated. Percentage-shares range from less than 1% to 11.94%.

    c.   Of the Opt-in Plaintiffs with data, 18 had no damages, but were each allocated minimum payments of $25.00 from the Net Settlement Fund.

    d.   The percentage-shares were then applied to the Net Settlement Fund, after allocating the 18 minimum $25 payments, to calculate the settlement payments identified in Exhibit A of the Settlement Agreement.[28]

        The Net Settlement Fund of $78,423.11, reflects approximately 216.53 minutes of unpaid time per week or approximately 43.31 minutes per day of a five-day workweek; and the average and median payments are $761.39 and $322.57, respectively.[29]

## II.   <u>MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT</u>

        Settlement of claims made pursuant to Section 16(b) of the FLSA is subject to approval by the Court. As shown in the attached Declaration of Robi J. Baishnab, and as explained below, Court approval is warranted on all scores.

### A.     <u>The Seven-Factor Standard is Satisfied.</u>

        The court presiding over an action brought under the FLSA may approve a proposed settlement "after scrutinizing the settlement for fairness."[30] As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of a collective [§ 216(b)]

---

[28] *Id*. at ¶¶ 15 to 16.
[29] *Id*. at ¶ 18.
[30] *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"[31]

The Sixth Circuit uses seven factors to evaluate class action settlements, and the Eastern District Court of Kentucky has applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[32]

As shown below and in the Declaration of Robi J. Baishnab, all factors in this matter supports approval of the Settlement.

### 1. No Indicia of Fraud or Collusion Exists.

Plaintiffs' Counsel has extensive experience litigating FLSA claims, including claims for unpaid overtime.[33] Defendants continue to deny any wrongdoing. Though settlement was ultimately successful, agreement was achieved only after arms-length good faith negotiations and facilitation by third-party neutral, Mike Ungar.[34] Notwithstanding settlement, the Parties continue to vigorously disagree as to whether off-the-clock work or unpaid travel time occurred at all, and whether overtime compensation is owed under the FLSA.[35] As such, there are no indicia of fraud or collusion.

---

[31] *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).
[32] *UAW v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14.
[33] Baishnab Decl. at ¶¶ 4 to 6.
[34] *Id*. at ¶ 10.
[35] *Id*. at ¶¶ 19 and 21.

### 2. The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.

The policy favoring settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. Moreover, the Parties continue to disagree over the merits of Representative Plaintiff's collective claims. Representative Plaintiff asserts that Defendants failed to pay him and others similarly situated for certain off-the-clock work and travel time, and failed to pay overtime compensation. Defendants deny any violation of federal or state law and dispute Plaintiff's allegations. Had this matter not settled, ongoing disputes would remain regarding liability, damages, and whether the two-year or three-year statute of limitations is applicable.[36]

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling, including possibly engaging dueling experts. Settlement, on the other hand, provides substantial relief to the Representative Plaintiff and the Settlement Class Members promptly and efficiently and amplifies the benefits of that relief through the economies of class resolution.[37]

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently.

Plaintiffs' counsel served on Named Defendants written interrogatories, requests for admissions, and requests for production of documents. Representative Plaintiff also served subpoenas upon three payroll companies: iSovled (fka Sage); Paylocity; and ADP. In the interest

---

[36] *Id*. at ¶ 19.
[37] *Id*. at ¶ 18.

of settlement, Representative Plaintiff agreed to stay Named Defendants' discovery responses except for wage and hour data to meaningfully prepare for mediation.[38]

Defendants produced wage and hour data for 84 Settlement Class Members in the form of Excel spreadsheets and a detailed explanation of payment methods among the various Settlement Defendant entities and branches.[39]

Plaintiffs' Counsel analyzed these documents, and their consultant evaluated the records and calculated the allegedly unpaid off-the-clock work, travel time, and overtime for the class, including incorporating to the highest degree possible the variables encompassed within the Policy Worksheet.[40] The final Net Settlement Fund was equitably allocated across all Settlement Class Members as described above.[41] Throughout the process, including before and after mediation, the Parties conferred, debated, supplemented, and made necessary revisions to the model and their respective legal positions.[42]

### 4. The Risks of Litigation Favor Approval.

Counsel for both sides believe in the merits of their clients' positions but, nonetheless, recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendants raise affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky and expectedly costly for all.[43]

---

[38] *Id*. at ¶ 13.
[39] *Id*. at ¶ 14.
[40] *Id*. at ¶¶ 15 to 18.
[41] *Id*.
[42] *Id*. at ¶ 17.
[43] *Id*. at ¶ 21.

### 5.     Uncertainty of Recovery Supports Approval.

The possible range of recovery is for Representative Plaintiff and the Settlement Class Members is open to dispute. Even if Representative Plaintiff succeeded on the merits of his collective claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. As an example, the Parties disagree about whether the allegedly unpaid off-the-clock work and travel time actually occurred, whether it is compensable under the FLSA or Ohio law, and whether overtime compensation is owed. Further, the Parties disagree as to whether a three-year statute of limitations and liquidated damages are applicable.[44]

### 6.     Experienced Counsels' Views Favor Approval.

Both Plaintiffs' and Defendants' Counsel have extensive experience in wage-and-hour collective and class actions, the Parties have acted in good faith, and Counsel have represented their clients' best interests in reaching the Settlement. Plaintiffs' Counsel and Defendants' Counsel support the Settlement as reasonable, fair, adequate, and in the best interest of Representative Plaintiff and the class as a whole, as described in the Declaration of Robi J. Baishnab.[45] Third-party neutral, Mike Ungar, expressed support for settlement as well.[46]

### B.     <u>The Settlement Distributions are Fair, Reasonable, and Adequate.</u>

As a part of the scrutiny it applies to a FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable."[47] All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff and the Settlement Class Members.

---

[44] *Id*. at ¶ 19.
[45] *Id*. at ¶ 22.
[46] *Id*.
[47] *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999).

### 1. The Settlement Shares Are Reasonable and Adequate.

Defendants' Counsel produced all of the wage and hour data reasonably obtainable. Complete wage and hour data was produced for 84 Settlement Class Members in the form of Excel spreadsheets, along with the Policy Worksheet.[48] Through analysis by Plaintiffs' Counsel and the PhD consultant, a damages model was developed, reflecting unpaid overtime for the entire class.[49] The model was shared, discussed, and adjusted made throughout the process.[50]

The data was used by the PhD level economist to determine average unpaid overtime and to allocate class shares equitably. Opt-in Plaintiffs who had no damages were each allocated a minimum payment of $25.00. The Net Settlement Fund of $78,423.11, reflects approximately 216.53 minutes of unpaid time per week, or approximately 43.31 minutes per day of a five-day workweek. The average and median payments are $761.39 and $322.57, respectively.[51]

### 2. Representative Plaintiff's Service Award Is Proper and Reasonable.

Service awards to representative plaintiffs recognize the value of their services on behalf of other participants and are proper. "Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent."[52]

In this Circuit, service awards to representative plaintiffs are "typically justified when the named plaintiffs expend time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in

---

[48] *Id*. at ¶ 14.
[49] *Id*. at ¶¶ 14 to 15.
[50] *Id*. at ¶ 17.
[51] *Id*. at ¶¶ 15 to 18.
[52] *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990) (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

prosecution of [the] case."[53] The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances."[54]

Representative Plaintiff contributed significant time, effort, and detailed factual information enabling the Parties to successfully resolve this matter. He agreed to put his name on the line on behalf of the Settlement Class Members. The amount of **$2,500.00**, represents Representative Plaintiff's time and effort in prosecuting this matter through settlement. Defendants do not object to the requested Service Award.[55]

### 3. The Attorneys Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable.

After the Court has confirmed that the terms of settlement are fair to the Representative Plaintiff and the Class Members, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The Settlement reflects Defendants' agreement to pay Plaintiffs' Counsel **$48,403.71**, which is one-third of the total settlement amount.[56] Additionally, Plaintiffs' Counsel anticipates expending time and resources in helping effectuate settlement and dismissal, including responding to phone and email inquiries concerning settlement, for which Plaintiffs' Counsel will not be paid or reimbursed.[57]

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs

---

[53] *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).
[54] *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").
[55] Baishnab Decl. at ¶ 23.
[56] *Id*. at ¶ 24.
[57] *Id*. at ¶ 28.

of the action."[58] In *Fegley v. Higgins*,[59] the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."[60]

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.*,[61] in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."[62]

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*:[63]

---

[58] 29 U.S.C. § 216(b).
[59] 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994).
[60] *Id*. (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).
[61] 2007 WL 3173972 (W.D. Mich. 2007).
[62] *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").
[63] 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4.

The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement.[64]

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the Settlement in the present case is exemplary.

As discussed above, settlement provides class settlement distributions reflecting approximately 216.53 minutes of unpaid time per week or approximately 43.31 minutes per day of a five-day workweek, an average payment of $761.39, a median payment of $322.57, and a minimum payment to opt-ins with data and no damages of $25.00.[65] Therefore, the attorneys' fees requested are reasonable in light of the exceptional benefit achieved for the Representative Plaintiff and the Class Members.

One-third fee requests have been approved in numerous collective and class actions in Ohio, including this Court.[66] The attorneys' fees requested by Plaintiffs' Counsel should not be altered. Counsel efficiently resolved this case early on rather than prolonging litigation and increasing their potential fees and costs. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient

---

[64] *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).
[65] Baishnab Decl. at ¶¶ 16 and 18.
[66] *Id*. at ¶ 26.

15

counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation."[67]

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the Action, Defendants could have succeeded. Therefore, the Representative Plaintiff and the Settlement Class Members were at great risk for non-payment.[68] This risk of non-payment strongly supports the amount requested here and warrants approval.

Plaintiffs' Counsel's expenses are **$15,884.31**. All expenses were incurred during the course of the litigation of this Action, which included initial notice, expert analysis of the voluminous wage and hour data produced, and one-half of mediation costs. Defendants do not oppose the requested fees or costs.[69]

III.  **CONCLUSION**

The Parties request that this Court enter the Order, attached hereto as **Exhibit 3**:

1. Approving the Parties' Settlement Agreement, a fully executed copy of which is attached hereto as **Exhibit 1**;

2. Approving the requested Service Award to Jordan Bailey;

3. Approving Plaintiffs' Counsel's requested attorneys' fees and costs;

4. Retaining jurisdiction over the Action to enforce the terms of the Settlement Agreement; and

5. Dismissing this matter with prejudice.

---

[67] Manual for Complex Litigation (4th) § 14.121.
[68] Baishnab Decl. at ¶ 25.
[69] *Id*. at ¶¶ 27 and 29.

Respectfully submitted,

**NILGES DRAHER LLC**                         **DINSMORE & SHOHL LLP**

*/s/ Robi J. Baishnab*                          */s/ Michael B. Mattingly (with permission)*
Robi J. Baishnab (0086195)                 Michael B. Mattingly, Esq. (#0089847)
34 N. High Street                                Lindsey N. Boyd, Esq. (#0099076)
Suite 502                                        255 E. Fifth Street, Suite 1900
Columbus, OH 43215                         Cincinnati, Ohio 45202
Phone: 614.824.5770                          Tel: 513-977-8397
Fax: 330.754.1430                             Fax: 513-977-8141
rbaishnab@ohlaborlaw.com              Email: michael.mattingly@dinsmore.com
                                                        lindseyN.boyd@dinsmore.com

Shannon M. Draher (0074304)
Hans A. Nilges (0076017)                    *Counsel for Defendants*
7266 Portage Street NW
Suite D
Massillon, OH 44646
Phone: 330.470.4428
Fax: 330.754.1430
sdraher@ohlaborlaw.com
hans@ohlaborlaw.com

*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 15, 2020, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Robi J. Baishnab*
Robi J. Baishnab

*Counsel for Plaintiffs*

17