UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JORDAN BAILEY, on behalf of
himself and all others similarly situated,

        Plaintiff,

      v.

BLACK TIE MANAGEMENT
COMPANY LLC, *et. al.*,

        Defendants.

Case No. 2:19-cv-1677
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

<u>**OPINION AND ORDER**</u>

The matter before the Court is the Joint Motion for Fair Labor Standards Act Settlement Approval (ECF No. 77).  For the following reasons, the motion (ECF No. 77) is **GRANTED**.

**I.**

Plaintiff Jordan Bailey ("Plaintiff") initiated this action on April 29, 2019 alleging violations of the Fair Labor Standard Act ("FLSA"), 29 US.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Act of 1938, the Ohio Revised Code §§ 4111, *et seq.*, and the Ohio Constitution, Article II, Section 34(a).  (*See* Compl., ECF No. 2; Am. Compl., ECF No. 12.)  Plaintiff alleged that Defendants Black Tie Management Company, LLC, Black Tie Moving Services LLC, Black Tie Moving Columbus LLC, Black Tie Moving Cleveland LLC, Black Tie Moving Cincinnati LLC, James Dustin Black, and Christopher Hess (collectively "Defendants") employed Plaintiff and others similarly situated to carry out their intrastate moving services among several states.  (*Id.* ¶ 21.)  Defendants employed Plaintiff and other similarly situated employees as non-exempt drivers who either did not cross state lines or did not cross state lines for periods of more than four months.  (*Id.* ¶ 22.)  Plaintiff alleged that Defendants misclassified Plaintiff and others similarly

situated as independent contractors.  (*Id.* ¶ 24.)

Plaintiff plead that Defendants failed to pay him and others similarly situated when they engaged in compensable work and for travel time.  (*See id.* ¶¶ 28–34.)  Additionally, Plaintiff contended Defendant failed to pay Plaintiff and others similarly situated overtime compensation. (*Id.* ¶¶ 35–36.)  Finally, Plaintiff alleged he was never paid his final paycheck and more than 30 days had passed since such wages were due.  (*Id.* ¶ 60.)  Thus, Plaintiff contended Defendants violated both the FLSA and Ohio law.  (*See id.*)  Plaintiff brought this action as an FLSA collective action and a Federal Rule of Civil Procedure Rule 23 class action.  (*See id.*)

On November 12, 2019, the Court granted in part and denied in part Plaintiff's motion to conditionally certify a class.  (*See* ECF No. 34.)  On June 3, 2020, the parties participated in a mediation before mediator Mike Ungar and reached a settlement.  (*See* Baishnab Decl., ¶ 11, ECF No. 77-2.)  On June 18, 2020, the parties filed a joint notice of settlement.  (*Id.* ¶ 11.)

On July 15, 2020, Plaintiff and Defendants (the "Parties") filed a joint motion to approve their settlement agreement.  (*See* Joint Mot. Fair Labor Standards Act Settlement Approval, ECF No. 77, hereinafter "Joint Mot.").  The settlement includes Defendants, 103 class members, of which 69 are opt-in Plaintiffs, and those who worked in Ohio during the period of April 29, 2016 to May 11, 2020, who have not yet joined the lawsuit but will have the opportunity to join through settlement.  (*Id.* at 2, 4–5.)  The total settlement amount is $145,211.13 which covers alleged unpaid overtime, a service award to named Plaintiff ($2,500), liquidated damages, attorney's fees ($48,403.71), and costs ($15,884.31).  (*Id.* at 5–6.)  The settlement allocates $78,423.11 across the class members which represents approximately 216.52 minutes of unpaid overtime per week, and thus, an average median of $761.39.  (*Id.* at 7.)  Plaintiff agrees to release his claims against Defendant.  (*Id.*)

The Parties have submitted their settlement agreement, a list of the class and the amount they will receive if the Court approves the settlement agreement, the proposed notice to the opt-in Plaintiffs, the proposed notice to the non-opt-in Plaintiffs, and Plaintiffs' attorney Robi J. Baishnab's declaration.  (*See* ECF Nos. 77-1–77-3.)

## II.

"An employee's claims under the FLSA generally are non-waivable and may not be settled without supervision of either the secretary of Labor or a district Court."  *Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 U.S. Dist. LEXIS 166605, at *6 (S.D. Ohio Dec. 2, 2016). "Thus, the proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness."  *Id.* at *6–7 (internal citations omitted).  "If a settlement in an employee FLSA suit reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, the court may approve the settlement in order to promote the policy of settlement of litigation."  *Id.* (internal citations omitted).

"The Sixth Circuit has identified the following seven factors a court may consider in determining whether the settlement of FLSA claims is 'fair and reasonable:' (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement."  *Snide v. Disc. Drug Mart, Inc.*, No. 1L11CV244, 2013 U.S. Dist. LEXIS 40078, at *3–4 (N.D. Ohio Feb. 27, 2013) (internal citation omitted).  "These factors have also been applied

by Courts in evaluating the fairness, reasonableness, and adequacy of an FLSA settlement." *Vigna*, 2016 U.S. Dist. LEXIS 166605 at *6.

### III.

The Parties argue that all factors weigh in favor of the Court approving this settlement. The Parties assert the following factors are relevant to the Court's decision and the Court agrees.

### 1.  Indicia of Fraud or Collusion

The Parties argue that their counsel "has extensive experience litigating FLSA claims, including claims of unpaid overtime." (Joint Mot. at 8.)  Additionally, the Parties argue that the settlement was achieved after "arms-length good faith negotiations and facilitated by third-party neutral Mike Ugnar."  (*Id.*)  "Courts presume the absence of fraud or collusion unless there is evidence to the contrary."  *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006).  There is no evidence of fraud or collision in this case and instead only evidence of good-faith arms-length negotiations.  This factor favors approval of the settlement.

### 2.  Complexity, Expense, and Duration of Litigation

The Parties argue employment cases, and wage-and-hour cases in particular, are expensive and time-consuming.  (Joint Mot. at 9.)  Specifically, in this case, the parties continue to disagree as to the merits of the case which include issues regarding liability, damages, and whether the two- or three-year statute of limitations is applicable.  (*Id.*; Baishnab Decl. ¶ 19.)  Thus, the Parties argue, "[i]f forced to litigate this case further, the Parties would engage in complex, costly, and protracted wrangling, including possibly engaging dueling experts."  (*Id.*)

Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Settlement.  *See Mitchell v. Indep. Home*

*Care, Inc.*, No. 2:17-cv-717, 2019 U.S. Dist. LEXIS 26464, at \*9 (S.D. Ohio Feb. 20, 2019) (finding the same); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at \*8 (S.D. Ohio Aug. 17, 2018) (finding the same).  If this matter was not settled at this time the Parties would have to engage in discovery, there would likely be summary judgment motions, case management conferences, trial preparation, and more.  This would cause the parties expense and time.  Accordingly, this factor weighs in favor of approving this settlement.

### 3. Discovery Completed

The Parties contend that they have engaged in sufficient investigation to allow them to act intelligently.  (*Id.* at 9; Baishnab Decl. ¶ 13.)  Specifically, Plaintiffs' counsel served written interrogatories, requests for admissions, and requesst for production of documents.  (*Id.*; Baishnab Decl. ¶ 13.)  Additionally, Plaintiff subpoenaed three payroll companies.  (*Id.*)  In the interest of the settlement, however, Plaintiff stayed Defendants' discovery responses except any wage and hour data needed to prepare meaningfully for mediation.  (*Id.* at 9–10; Baishnab Decl. ¶ 13.)  Defendants produced wage and hour data for 84 class members.  (*Id.* at 10; Baishnab Decl. ¶ 14.)

"To confirm that [] Plaintiff[] 'ha[s] had access to sufficient information to evaluate [his] case and to assess the adequacy of the proposed Settlement,' the Court must consider the amount of discovery engaged in by the parties." *Wright*, 2018 U.S. Dist. LEXIS 140019 at \*9 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006)).  "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the [C]ourt should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Id.* (quoting *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 U.S. Dist. LEXIS 14890, at \*19 (E.D. Mich. Mar. 31, 2006)).  "In this consideration, 'the absence of formal

discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties.'" *Id.* at *9–10 (citing *UAW*, 2006 U.S. Dist. LEXIS 14890 at *19).

In this case the parties engaged in substantial informal and some formal discovery including an investigation of the facts, communication between the parties, analysis of documents, and analysis of legal positions. Of specific importance is that the parties reviewed the wage and hour data for Defendants' employees in order to be fully appraised of the facts relevant to the case. This leads the Court to believe both parties made an informed decision to enter into this settlement agreement. This factor weights in favor of approving the settlement agreement.

### 4. Likelihood of Success on the Merits

The Parties argue that "[c]ounsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result." (Joint Mot. at 10.) The parties believe continued litigation "would be risky and expensive for all." (*Id.*; *see also* Baishnab Decl. ¶ 21.) "The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Wright*, 2018 U.S. Dist. LEXIS 140019 at *10–11 (citing *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)).

Here, Plaintiff alleges he and others similarly situated were not paid for compensable time and were not paid overtime wages as required by the FLSA and Ohio law. Defendant denies Plaintiff's claims and also raises defenses. Due to the uncertainties inherent in Plaintiff's claims the likelihood of success is uncertain. Thus, this factor weighs in favor of approving the settlement. *See Wright*, 2018 U.S. Dist. LEXIS 140019 at *11 (finding the same); *Mitchell*, 2019 U.S. Dist.

LEXIS 26464 a *12 (finding the same).

### 5. Opinion of Class Counsel

The parties state their "counsel have expensive experience in wage-and-hour collective and class actions" and "have represented their clients' best interests in reaching the settlement. (Joint Mot. at 11.) "The recommendation of [] [c]ounsel, skilled in class actions and corporate matters, that the Court should approve the [s]ettlement is entitled to deference." *Wright*, 2018 U.S. Dist. LEXIS 140019 at *11–12; *see, e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs .... [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

The Court gives deference to the parties' counsel's belief that the settlement is fair and reasonable particularly in light of counsel's experience in this type of litigation. Thus, this factor weighs in favor of approving the settlement.

### 6. Settlement Distributions

The Parties contend Defendants' counsel produced the wage and hour data reasonably obtained in an Excel spreadsheet. (Joint Mot. at 12.) Plaintiffs' counsel then consulted a PhD consultant and developed a damages model reflecting unpaid overtime for the entire class. (*Id.*; Baishnab Decl. ¶ 15.) This information was used to determine an average unpaid overtime to allocate class shares equitably. (*Id.*) Opt-in Plaintiffs who had no damages are to be allocated $25. (*Id.*; Baishnab Decl. ¶ 16.) "As a part of its exacting and thorough examination of a class

action settlement, a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at \*31 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 855 (1999)). The Court finds the allocation of the settlement proceeds fair and reasonable in this case based on the Parties' extensive effort to develop an appropriate model for damages.

The Parties also seek to give $2,500 to the representative Plaintiff for his time and effort in prosecuting this matter.  "Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent." *In re Fun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 266, 373 (S.D. Ohio 1990).  The Court finds it reasonable for the named Plaintiff in this case, who put in time, effort and detailed factual information, to receive an allocation as provided for in the settlement agreement.  This factor weighs in favor of approving the settlement agreement.

### 7.  Attorney's Fees & Costs

Finally, the Parties' agreement allocates attorney's fees for Plaintiffs' counsel in the amount of $48,403.71, one-third of the total settlement amount.  (Joint Mot. at 15.)  This represents 216.53 minutes of unpaid work per week.  (*Id.*)  Additionally, the settlement agreement provides Plaintiffs' counsel $15,884.31 in expenses which includes the initial notice, expert analysis of the voluminous wage and hour data produced, and one-half of the mediation costs.  (*Id.* at 16.)

If an employer is found liable under the FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant and costs to the action."  29 U.S.C. § 216(b).  In determining the reasonableness of fees, the Court is cognizant that "[t]he purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour

grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).  Further, "an award of attorney fees [] encourages the vindication of congressionally identified policies and rights." *Id.* at 1134–35.  District courts have approved collective and class actions fee requests when the fee is one-third of the total settlement amount.  *See e.g.*, *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 U.S. Dist. LEXIS 79606, at *13–14 (W.D. Mich. Oct. 26, 2007) (citing *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").  The Court finds the fee-request here, seeking one-third of the total settlement agreement, is reasonable.

### 8.  Balancing the Relevant Factors

All of the relevant factors weigh in favor of approving this settlement.  The Court finds the settlement reflects a reasonable compromise over issues and therefore is fair and reasonable.  *See Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *6–7 (S.D. Ohio June 24, 2022 ("If a settlement in an employee FLSA suit reflects 'a reasonable compromise issues', such as FLSA coverage and/or computation of back wages that are 'actually in dispute,' the Court may approve  the settlement 'in order to promote the policy of encouraging settlement of litigation.'") (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).  Thus, the Court APPROVES the settlement agreement.

### IV.

In sum, the Joint Motion for Fair Labor Standard Act Settlement Approval (ECF No. 77) is **GRANTED.**  The Settlement Agreement (ECF No. 77-1) is **APPROVED** and the case is **DISMISSED**.  This Court shall retain jurisdiction over this matter for the purpose of enforcing the Settlement Agreement.  The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED.**


**8/12/2020**                              **s/Edmund A. Sargus, Jr.**
**DATE**                                   **EDMUND A. SARGUS, JR.**
                                           **UNITED STATES DISTRICT JUDGE**